UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STREAM INTERNATIONAL GLOBAL
SERVICES PHILIPPINES, INC.,

    Petitioner,

v.

PEEK, INC.,

    Respondent.

Case No. 12 CV 3485

---

**DECLARATION OF LEONARD G. LEARNER IN SUPPORT
OF PETITION TO CONFIRM ARBITRATION AWARD**

Leonard G. Learner, being duly sworn, deposes and says as follows:

1. I am an attorney and the sole proprietor of the Law Offices of Leonard G. Learner, located in Wellesley, Massachusetts. I am admitted to practice before the courts of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts and the United States Court of Appeals for the First Circuit. During the course of my career, I also have been admitted to practice *pro hac vice* before various other federal and state courts around the country.

2. I am co-counsel for petitioner Stream International Global Services Philippines, Inc. ("Stream") in the above-captioned matter, and I acted as Stream's counsel of record in the arbitration proceeding that is the subject of Stream's Petition in this Court. I submit this Declaration in support of Stream's Petition to confirm the arbitration award issued by the International Centre for Dispute Resolution on August 5, 2011 (the "Award") in Stream's favor

and against the respondent Peek, Inc. ("Peek"). A true copy of the Award is appended hereto as Exhibit A.

## Background

3. Stream is a Philippines corporation with a principal place of business at PBCom Tower, 15th Floor, 6795 Ayala Avenue cor. V.A. Rufino Street, Makati City, Philippines. Stream is in the business of providing outsourced, multi-lingual call center services to facilitate product orders and to offer technical product support to clients' customers. Stream is a subsidiary of Stream Global Services, Inc. which, through its subsidiaries and related entities, provides these services for clients in a variety of businesses, including Internet service providers, software companies, computer hardware manufacturers, wireless and telecommunication providers and others, from approximately fifty locations serving twenty-two countries in thirty-five languages.

4. Peek is a corporation with a principal place of business at 419 Lafayette Street, New York, New York. According to its website, Peek also maintains two offices in India and three offices in China. Peek is in the business of producing handheld mobile Internet devices and "smart phone" applications that perform email and other functions. Peek then sells these devices and applications to its retail customers.

5. On November 10, 2008, Stream's predecessor and Peek entered into a Master Services Agreement (the "Agreement") pursuant to which Stream was to provide call center services to Peek consistent with a Statement of Work appended to the Agreement for a period of three years from the effective date of the Agreement, with the term of the Agreement renewing automatically for successive one-year periods thereafter if neither party provided the other with

one hundred eighty (180) days written notice of its intent not to renew.  A true copy of the

Agreement is appended hereto as Exhibit B.

      6. Section 21.2 of the Agreement contains an arbitration provision that states in pertinent

part:

> Any and all . . . disputes or controversies, whether of law or fact and of any nature
> whatsoever arising from or in connection with this Agreement, including the
> scope and validity of this Section, shall be decided by binding arbitration in
> accordance with the rules and regulations of commercial arbitration of the
> American Arbitration Association . . . . Arbitration shall take place in New York,
> New York . . . . The decision of the arbitrator will be final and binding upon the
> Parties hereto and all persons claiming under and through them; provided,
> however, that either Party or any such other claiming person may seek the
> vacating, modification or correction of the arbitrator's decision or award as
> provided under Section 10 and Section 11 of the Federal Arbitration Act 9 U.S.C.
> § 1-14 . . . . The losing Party shall be required to pay the reasonable legal fees and
> costs of the prevailing Party as determined by the arbitrator(s).

      7. Pursuant to the Agreement, the parties also agreed that New York law would govern

the Agreement.  Section 22.5 of the Agreement states, "This Agreement shall be governed by

and construed in accordance with the internal laws (and not the conflict of laws) of the State of

New York."

      8. The parties further agreed that this Court or the courts of the State of New York would

have sole and exclusive jurisdiction over any suit arising from the Agreement.  Section 22.6 of

the Agreement provides in pertinent part:

> Each Party irrevocably agrees that any legal action suit or proceeding brought by
> it in any way arising out of this Agreement must be brought solely and
> exclusively in the United States District Court for the Southern District of New
> York or in the state courts of the State of New York and irrevocably accepts and
> submits to the sole and exclusive jurisdiction of each of the aforesaid courts in
> personam, generally and unconditionally with respect to any action, suit or
> proceeding brought by it or against it by the other Party . . . .

## The Arbitration Proceeding

9. On or about January 27, 2011, Stream filed its Demand for Arbitration seeking damages, interest, attorney's fees and arbitration costs arising from Peek's failure and refusal to remit payment for call center services rendered by Stream, in violation of the Agreement. A true copy of the Demand for Arbitration, without exhibits, is appended hererto as Exhibit C.

10. Despite being properly served by certified mail, received on January 31, 2011, Peek failed to file or serve any response of any kind to Stream's Demand for Arbitration and subsequently failed and refused to respond in any way to any of the procedural orders and other communications from the arbitration case manager concerning telephone conferences, conflicts checks, arbitrator ranking and selection, preliminary hearings or any other aspect of the arbitration.

11. On or about April 13, 2011, the International Centre for Dispute Resolution appointed Eugene I. Farber, Esq. of the White Plains, New York law firm of Farber, Pappalardo & Carbonari, to act as sole Arbitrator.

12. After written notice had been duly sent to Stream and to Peek, the Arbitrator convened a preliminary conference by telephone on May 11, 2011. Peek failed to participate in the telephone conference. After the conclusion of this preliminary conference, the Arbitrator issued Procedural Order Number 1, a true copy of which is appended hereto as Exhibit D. Procedural Order Number 1 ordered, in pertinent part:

> 1. By June 17, 2011 Claimant [Stream] may make a submission in support of its application for an award.
>
> 2. By July 15, 2011 Respondent [Peek] may submit opposition to Claimant's request.
>
> 3. Claimant may submit reply papers by July 29, 2011.

4

13. On June 17, 2011, pursuant to the Arbitrator's Procedural Order Number 1, Stream served and filed the following documents: (1) Application for Arbitration Award; (2) Memorandum of Law in Support of its Application for Arbitration Award; (3) Affidavit of Michael Montero and exhibits thereto; (4) Affidavit of Leonard G. Learner, Esq.; and (5) a proposed form of arbitration award. A true copy of this filing, excluding the exhibits to the Affidavit of Michael Montero, is appended hereto collectively as Exhibit E.

14. Although the Arbitrator's procedural order had given Peek the opportunity to file and serve an opposition to Stream's June 17, 2011 submission, Peek failed to do so. On July 25, 2011, the International Centre for Dispute Resolution gave written notice to the parties declaring that the hearings were closed and that it would accept no further submissions for the Arbitrator's consideration. A true copy of the July 25, 2011 notice is appended hereto as Exhibit F.

### The Award

15. The Arbitrator issued the Award in writing on August 5, 2011. The Award concludes as follows:

**Based upon the above, I hereby Award as follows:**

(A) Respondent shall pay to Claimant the principal sum of $182,584.41 plus interest at the rate of 18% per annum from the date each invoice became due and owing through June 30, 2011, in the total amount of $52,328.82, plus continuing interest at the rate of 18% per annum from July 1, 2011 until date of payment.

(B) Respondent shall pay to Claimant attorneys' fees in the amount of $14,000.00.

(C) The administrative fees and expenses of the International Centre for Dispute Resolution ("ICDR") totaling $2,800.00 shall be borne by Respondent, and the compensation and expenses of the arbitrator totaling $3,516.25 shall be borne by Respondent. Therefore, Respondent shall reimburse Claimant the sum of $6,316.25, representing said fees and expenses previously incurred by Claimant.

(D) This award is in full settlement of all claims submitted to this Arbitration.

16. The Award has not been vacated or modified since it was issued. To date, Peek has not complied with the requirements of the Award, and the full amount of the Award remains outstanding, due and owing to Stream.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: April 30, 2012

Leonard G. Learner