UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STREAM INTERNATIONAL GLOBAL
SERVICES PHILIPPINES, INC.,

                  Petitioner,

v.

PEEK, INC.,

                  Respondent.

Case No. 12 CIV 3485 (TPG)

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO ENTER JUDGMENT CONFIRMING ARBITRATION AWARD

Petitioner Stream International Global Services Philippines, Inc. ("Stream") submits this memorandum of law in support of its Motion to Enter Judgment Confirming Arbitration Award in the above-captioned matter.  The arbitral award that is the subject of Stream's Petition to Confirm Arbitration Award, filed in this Court on May 2, 2012, is amply supported by the uncontested arbitral record and deserves to be summarily confirmed.

### Factual Background

The Parties

Stream is a Philippines corporation with a principal place of business at PBCom Tower, 15th Floor, 6795 Ayala Avenue cor. V.A. Rufino Street, Makati City, Philippines.  Stream is in the business of providing outsourced, multi-lingual call center services to facilitate product orders and to offer technical product support to clients' customers.  Stream is a subsidiary of Stream Global Services, Inc. which, through its subsidiaries and related entities, provides these services for clients in a variety of businesses, including Internet service providers, software

companies, computer hardware manufacturers, wireless and telecommunication providers, and others, from approximately fifty locations serving twenty-two countries in thirty-five languages. *See* Declaration of Leonard G. Learner in Support of Petition to Confirm Arbitration Award, filed on May 8, 2011, ("Learner Declar.") ¶ 3.

Respondent Peek, Inc. ("Peek") is a corporation with a principal place of business at 33 West 17th Street, 9th Floor, New York, New York. *See id.* ¶ 4; Declaration of Mathew F. Putorti, filed herewith, ("Putorti Declar.") ¶¶ 3–4. According to its website, Peek also maintains two offices in India and three offices in China. Peek is in the business of producing handheld mobile Internet devices and "smart phone" applications that perform email and other functions. Peek then sells these devices and applications to its retail customers. *See* Learner Declar. ¶ 4.

On November 10, 2008, Stream's predecessor and Peek entered into a Master Services Agreement ("Agreement") pursuant to which Stream was to provide call center services to Peek consistent with a Statement of Work appended to the Agreement for a period of three years from the effective date of the Agreement, with the term of the Agreement renewing automatically for successive one-year periods thereafter if neither party provided the other with one hundred eighty (180) days written notice of its intent not to renew. *See id.* ¶ 5 & Exhibit B thereto.

Section 21.2 of the Agreement contains an arbitration provision that states in pertinent part:

> Any and all . . . disputes or controversies, whether of law or fact and of any nature whatsoever arising from or in connection with this Agreement, including the scope and validity of this Section, shall be decided by binding arbitration in accordance with the rules and regulations of commercial arbitration of the American Arbitration Association . . . . Arbitration shall take place in New York, New York . . . . The decision of the arbitrator will be final and binding upon the Parties hereto and all persons claiming under and through them; provided, however, that either Party or any such other claiming person may seek the vacating, modification or correction of the arbitrator's decision or award as provided under Section 10 and Section 11 of the Federal Arbitration Act 9 U.S.C.

> § 1-14 . . . . The losing Party shall be required to pay the reasonable legal fees and costs of the prevailing Party as determined by the arbitrator(s).

Pursuant to the Agreement, the parties also agreed that New York law would govern the Agreement. Section 22.5 of the Agreement states, "This Agreement shall be governed by and construed in accordance with the internal laws (and not the conflict of laws) of the State of New York." *Id.* at Exhibit B.

The parties further agreed that this Court or the courts of the State of New York would have sole and exclusive jurisdiction over any suit arising from the Agreement. Section 22.6 of the Agreement provides in pertinent part:

> Each Party irrevocably agrees that any legal action suit or proceeding brought by it in any way arising out of this Agreement must be brought solely and exclusively in the United States District Court for the Southern District of New York or in the state courts of the State of New York and irrevocably accepts and submits to the sole and exclusive jurisdiction of each of the aforesaid courts in personam, generally and unconditionally with respect to any action, suit or proceeding brought by it or against it by the other Party . . . .

*Id.*

## The Arbitration Proceeding

On or about January 27, 2011, Stream filed its Demand for Arbitration with the International Centre for Dispute Resolution, seeking damages, interest, attorney's fees, and arbitration costs arising from Peek's failure and refusal to remit payment for call center services rendered by Stream, in violation of the Agreement. *Id.* ¶ 9 & Exhibit C thereto.

Despite being properly served by certified mail, received on January 31, 2011, Peek failed to file or serve any response of any kind to Stream's Demand for Arbitration. Peek subsequently failed and refused to respond in any way to any of the procedural orders and other communications from the arbitration case manager concerning telephone conferences, conflicts

3

checks, arbitrator ranking and selection, preliminary hearings, or any other aspect of the
arbitration. *Id.* ¶ 10.

On or about April 13, 2011, Eugene I. Farber, Esq. of the White Plains, New York law
firm of Farber, Pappalardo & Carbonari, was appointed to act as sole Arbitrator. *Id.* ¶ 11. After
written notice had been duly sent to Stream and to Peek, Arbitrator Farber convened a
preliminary conference by telephone on May 11, 2011. Peek failed to participate in the
telephone conference. *Id.* ¶ 12. After the conclusion of this preliminary conference, Arbitrator
Farber issued to the parties Procedural Order Number 1, which ordered in pertinent part:

> 1. By June 17, 2011 Claimant [Stream] may make a submission in support of its
> application for an award.
>
> 2. By July 15, 2011 Respondent [Peek] may submit opposition to Claimant's
> request.
>
> 3. Claimant may submit reply papers by July 29, 2011.

*Id.* & Exhibit D thereto.

On June 17, 2011, pursuant to the Arbitrator's Procedural Order Number 1, Stream filed
and served the following documents: (1) Application for Arbitration Award; (2) Memorandum
of Law in Support of its Application for Arbitration Award; (3) Affidavit of Michael Montero
and exhibits thereto; (4) Affidavit of Leonard G. Learner, Esq.; and (5) a proposed form of
arbitration award. *Id.* ¶ 13 & Exhibit E thereto. Although the Arbitrator's procedural order had
given Peek the opportunity to file and serve an opposition to Stream's June 17, 2011 submission,
Peek failed to do so. *Id.* ¶ 14. On July 25, 2011, the International Centre for Dispute Resolution
gave written notice to the parties declaring that the hearings were closed and that it would accept
no further submissions for Arbitrator Farber's consideration. *Id.* & Exhibit F thereto.

4

The Arbitration Award

Arbitrator Farber issued his award in writing on August 5, 2011 ("Award"). The Award concluded as follows:

**Based upon the above, I hereby Award as follows:**

(A)  Respondent shall pay to Claimant the principal sum of $182,584.41 plus interest at the rate of 18% per annum from the date each invoice became due and owing through June 30, 2011, in the total amount of $52,328.82, plus continuing interest at the rate of 18% per annum from July 1, 2011 until date of payment.

(B)  Respondent shall pay to Claimant attorneys' fees in the amount of $14,000.00.

(C)  The administrative fees and expenses of the International Centre for Dispute Resolution ("ICDR") totaling $2,800.00 shall be borne by Respondent, and the compensation and expenses of the arbitrator totaling $3,516.25 shall be borne by Respondent.  Therefore, Respondent shall reimburse Claimant the sum of $6,316.25, representing said fees and expenses previously incurred by Claimant.

(D)  This award is in full settlement of all claims submitted to this Arbitration.

*Id.* ¶ 15 & Exhibit A thereto (bold type in original).  The Award has not been vacated or modified since it was issued.  To date, Peek has not complied with the requirements of the Award, and the full amount of the Award remains outstanding, due, and owing to Stream.  *Id.* ¶ 16.

Procedural Facts in this Court

Stream commenced this action to confirm the Award on May 2, 2012.  On May 3, 2012, Stream attempted to serve Peek with the petition and supporting papers, by first-class mail, postage prepaid, at its usual place of business where Stream and the International Centre for Dispute Resolution had successfully sent prior mailings to Peek.  *See* Putorti Declar. ¶ 2. An affidavit of service was filed in this Court on May 8, 2012. *Id.*  On May 14, 2012, Stream's

5

mailing was returned to counsel by the United States Postal Service as "undeliverable" and "unable to forward." *Id.* ¶ 3.

Notwithstanding Peek's attempt to vacate its premises without a trace, Stream eventually uncovered a new address for Peek on West 17th Street in Manhattan. Stream served Peek by hand delivery to the West 17th Street address on June 1 and June 7, 2012. On both occasions, the documents were received by Peek's chief executive officer. Affidavits of service of these documents were filed in this Court on June 4 and June 14, 2012 respectively. *See id.* ¶¶ 4–5.

As of the date of this memorandum, Peek has not responded in any way whatsoever to the documents served upon it by hand delivery on June 1 and June 7, 2012.

**Argument**

A. Stream's Petition Should Be Treated as an Unopposed Motion for Summary Judgment

In the arbitration phase of this case, Peek not only ignored the procedural requirements of the International Centre for Dispute Resolution, it also utterly ignored the Arbitrator's Award itself. Thus, the Award remains completely unsatisfied and even unacknowledged by Peek. *See* Learner Declar. ¶ 16. Because Peek has ignored the Award and because "[a]rbitration awards are not self-enforcing," Stream's Award against Peek can be given force and effect only if converted into a judicial order of this Court. *D. H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 104 (2d Cir. 2006), *quoting, Hoeft v. MVL Group, Inc.,* 343 F.3d 57, 63 (2d Cir. 2003).

Moreover, because Stream's petition to this Court is a continuation of the proceeding Stream initiated in the arbitral forum, the Federal Arbitration Act provides that Stream's petition will be treated as a motion in an ongoing proceeding "rather than a complaint initiating a plenary action." *D.H. Blair,* 462 F.3d at 108; *see Productos Mercantiles E Industriales, S.A. v. Fabrege USA, Inc.,* 23 F.3d 41, 46 (2d Cir. 1994) (post-arbitration petition properly treated by district

6

court "as a motion in accordance with the express provisions" of Federal Arbitration Act); 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions").[1]

Where, as here, Peek has continued its practice of ignoring all proceedings against it and now has failed to respond to Stream's properly-served petition, Stream's petition should be treated by this Court as akin to "an unopposed motion for summary judgment," with Stream's submissions in support of its petition serving as the equivalent of a summary judgment record. *D.H. Blair*, 462 F.3d at 109–10.

B. The Arbitrator's Award in Stream's Favor Should Be Confirmed

Confirmation of an arbitration award typically is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). A court should confirm the arbitral award "if a ground for the arbitrator's decision can be inferred" from the record of the arbitration. *Barbier v. Shearson Lehman Hutton, Inc.*, 954 F.2d 117, 121 (2d Cir. 1972); *D.H. Blair*, 462 F.3d at 109 (the judgment the court enters "should be based" on the arbitration record). Indeed, only a "barely colorable justification" for an arbitrator's decision is necessary to confirm the award. *Landy Michaels Realty Corp. v. Local 32B-32J, SEIU*, 954 F.2d 794, 797 (2d Cir. 1992).[2]

---

[1] Accordingly, Peek may not be heard to complain that it was not served with process in this case, in accordance with Fed.R.Civ.P. 4, and therefore had no obligation to respond to Stream's petition. To the contrary, because Stream's petition is a "motion" (*see* discussion *supra* at 6–7), Stream properly served the petition and supporting materials upon Peek in the manner a motion would be served, pursuant to Fed.R.Civ.P. 5(b)(2)(A)–(B) and Local Civil Rule 6.1(b). *See generally* Putorti Declar. ¶¶ 2–5. Peek was obligated to respond to the properly served petition, but failed to do so. *See D.H. Blair*, 462 F.3d at 107 ("We agree that the . . . Petition should have been treated as a motion but disagree that [respondents] had no obligation to respond").

[2] In the closely analogous context of a motion for summary judgment, judgment will be awarded upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Silver v. City University*, 947 F.2d 1021, 1022 (2d Cir. 1991); *see Okunieff v. Rosenberg*, 996 F. Supp. 343, 347 (S.D.N.Y. 1998) (same). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Gould v. Winstar Communications, Inc.*, 686 F.3d 108 108, 118 (2d Cir. 2012).

7

In the instant case, the comprehensive and uncontroverted record before this Court demonstrates conclusively that the arbitration award in Stream's favor should be confirmed. Stream and Peek were parties to a written agreement pursuant to which Stream would provide call center services to Peek. *See* Learner Declar. ¶ 5 & Exhibit B thereto. The parties agreed that they would arbitrate "[a]ny and all . . . disputes or controversies, whether of law or fact and of any nature whatsoever arising from or in connection with" their written agreement. *Id.*, Exhibit B § 21.2. Stream fully performed all of its obligations under the agreement, and Peek at no time indicated any dissatisfaction or other issue with Stream's performance. *Id.*, Exhibit E (Affidavit of Michael Montero ("Montero Aff.")), ¶¶ 6–7. Beginning with Stream's November 2009 invoice, without explanation or justification, Peek failed and refused to pay Stream's monthly invoices for services rendered. *Id.*, Exhibit E (Montero Aff.), ¶¶ 7–12. After Peek failed to respond to Stream's numerous attempts, over many months, to discuss the growing arrearage in Peek's account (*Id.*, Exhibit E (Montero Aff.), ¶¶ 14–15), Stream filed a demand for arbitration seeking damages and other relief arising from Peek's refusal to pay for services rendered to it by Stream, in violation of the agreement. *Id.* ¶ 9 & Exhibit C thereto. Peek failed to file or serve any response to Stream's demand for arbitration and failed to respond in any way to any procedural orders or other communications from the Arbitrator or the case manager concerning any aspect of the arbitration. *Id.* ¶ 10. On August 5, 2011, the Arbitrator entered his Award in Stream's favor. *Id.* ¶ 15 & Exhibit A thereto.

The uncontested arbitration record here contains no genuine issue of material fact and contains ample justification for the Arbitrator's Award. Accordingly, the Award should be confirmed.

8

**Conclusion**

For all the foregoing reasons, Stream's Motion to Enter Judgment Confirming Arbitration Award should be granted, and a Judgment in Stream's favor and against Peek should be entered in the proposed form filed herewith.

Respectfully submitted,

ANDERSON KILL & OLICK, P.C.

By: _____

John M. O'Connor (JOC-1298)
1251 Avenue of the Americas
New York, NY 10020-1182
(212) 278-1000
Attorneys for Petitioner Stream
International Global Services Philippines,
Inc.

AND

Leonard G. Learner, Esq.
Law Offices of Leonard G. Learner
40 Beverly Road
Wellesley, MA 02481
(781) 237-2060
Co-counsel for Petitioner Stream
International Global Services Philippines,
Inc.

Dated:  October 9, 2012
New York, New York

9